## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| FREDRICO LOWE BEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:25-CV-00563 JMB |
| | ) | |
| ANDREW BAILEY, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM AND ORDER</u>

Self-represented plaintiff Fredrico Lowe Bey, an inmate currently incarcerated at the Eastern Reception Diagnostic Center (ERDCC), filed this civil rights action brought pursuant to 42 U.S.C. § 1983 on April 21, 2025; however, plaintiff neither paid the $405 Court filing fee nor filed a motion to proceed without prepayment of fees or costs. Plaintiff must do one or the other for this case to proceed. *See* E.D. Mo. L.R. 2.01(B)(1). If plaintiff files a motion seeking leave to commence this action without prepaying fees or costs, he must also file a certified copy of his prison account statement for the six-month period immediately preceding the filing of the complaint. *See* 28 U.S.C. § 1915(a)(2). Plaintiff's failure to timely pay the filing fee or file a motion seeking leave to commence this action without payment of fees or costs may result in the dismissal of this case, without prejudice and without further notice. After review of the complaint, the Court will also order plaintiff to amend his pleading on a Court-provided form. *See* E.D. Mo. Local Rule 2.06(A).

## Background

Plaintiff Fredrico Lowe Bey, an inmate at ERDCC in Bonne Terre, Missouri, filed a three-page document titled, "Ex Parte Petition for Writ of Habeas Corpus Ad Testificandum, Granting

Fredrico Lowe Bey to Appear Via Video Conference to Hear Reasons in Support of Relief." In support of his complaint, plaintiff filed a five-page document titled, "Ex Parte Motion for Court Order, to Have DNA Test Results Submitted to CODIS[1] for a Manual Keyboard Search and Comparison by the Missouri State Highway Patrol or the FBI, Under 42 U.S.C. §§ 14131 *et seq.* and 42 U.S.C. § 14132(b)(3)(C) DNA Identification Act.[2]" Because plaintiff appears to seek injunctive relief from the State of Missouri relating to the collection and identification of DNA relative to his criminal conviction, the Court filed the instant action pursuant to 42 U.S.C. § 1983.

The details of plaintiff's conviction are far from clear, however. Thus, the Court reviewed plaintiff's state criminal history on Missouri Case.Net, on Westlaw and through Pacer.gov. In November of 1988, plaintiff was convicted by a jury of forcible rape, forcible sodomy and tampering with a witness in the Circuit Court of the City of St. Louis.[3]

The evidence adduced at trial showed that at approximately 5:00 a.m. on the morning of May 21, 1988, the victim, who was seven months pregnant, was walking down the street to her home. As the victim walked down the street, a car with three men riding in it passed her and one of the men asked the victim if she needed a ride. When the victim answered no, the car proceeded to the next corner, made a U-turn and came back toward the victim. A man, who the victim later identified as plaintiff, jumped out of the car, grabbed the victim by the hair, and pulled her into an alley. The car also pulled into the alley and the other two men got out. The victim struggled with

---

[1]Combined DNA Index System.

[2]The DNA Information Act referred to by plaintiff is currently found at 34 U.S.C. § 12592.

[3]Because plaintiff's conviction was in 1988, the case is no longer accessible on Case.Net. The background information for his criminal case was taken from summaries of the denial of his direct appeal, the appeal of his federal habeas action and the appeal of the denial of his request for release based on DNA evidence. *See State v. Lowe Bey,* 807 S.W.2d 132 (Mo.Ct.App.1991); *Lowe Bey v. Groose*, 28 F.3d 816 (8th Cir. 1994); and *Bey v. State*, 272 S.W.3d 378 (Mo.Ct.App. 2008).

plaintiff. She was knocked to the ground, hit with a stick, and kicked in the side. One of the three men ripped the victim's dress and took off her underclothes. At this time, plaintiff was up over her and the victim was able to "get a good look at him." While the other two men held the victim, plaintiff sodomized and raped the victim without ejaculating.

After the attack, Officer Rubin Haman and Officer James Long responded to a 911 call and arrived at the scene. The officers found the victim's underclothes, shoes, and wallet in the alley. The victim was taken to the hospital between 6:30 a.m. and 7:00 a.m., approximately an hour and a half to two hours after the rape, and a rape kit was taken. Vaginal and oral smears were submitted to a police laboratory, along with the victim's clothing. An examination of the vaginal smears disclosed the presence of four or five sperm heads that did not have tails. No seminal fluid was found in the oral swabs taken from the victim.

Late in the evening of May 21, 1988, the victim identified plaintiff as the person who raped and sodomized her. Plaintiff was a person known to the victim and her boyfriend "from the neighborhood." She identified plaintiff from a photo spread on May 22, 1988, and later that day after plaintiff had been arrested, in a line-up. In the late morning of June 1, 1988, the victim received a phone call at home. A man's voice threatened that she would be killed by his brother unless she dropped the charges against him. She recognized plaintiff's voice from the rape. Officer Stephens, who responded to a 911 call because of the threat, telephoned the city jail and was informed by Captain Harris that plaintiff had used the jail telephone between 11:30 and 11:40 a.m.

In December 1988, plaintiff was sentenced as a prior, persistent offender to thirty-five (35) years imprisonment for the rape, thirty-five (35) years imprisonment for the sodomy and fifteen (15) years imprisonment for the tampering, to be served consecutively. After his conviction and sentencing, plaintiff filed a direct appeal and a post-conviction motion to vacate, set aside, or

correct his convictions and sentence pursuant to Missouri Supreme Court Rule 29.15. *Lowe Bey v. State*, No. 55971 (Mo.Ct.App.). Plaintiff's Rule 29.15 motion was denied without an evidentiary hearing. Plaintiff did not appeal the denial of Rule 29.15. Meanwhile, plaintiff's direct appeal had been stayed pending the outcome of the Rule 29.15 proceedings. Following denial of Rule 29.15 relief, plaintiff proceeded with his direct appeal, and on March 19, 1991, the Missouri Court of Appeals affirmed the conviction. *State v. Lowe Bey*, 807 S.W.2d 132 (Mo.Ct.App.1991). In December 1991, plaintiff's motion to recall the mandate was denied. *Id.*

Plaintiff filed his application for writ of habeas corpus in this Court on February 10, 1992, alleging nineteen (19) grounds for habeas relief. *Lowe Bey v. Groose*, No. 4:92-CV-224 DJS (E.D.Mo. Mar. 8, 1993). The application for writ was denied on March 8, 1993. *Id.* Plaintiff appealed the dismissal to the Eighth Circuit Court of Appeals. *Lowe Bey v. Groose*, 28 F.3d 816 (8th Cir. 1994). The Eighth Circuit affirmed the denial of the writ on July 5, 1994. *Id.*

### Plaintiff's Attempts to Attack His Conviction Through DNA Evidence

Plaintiff's efforts to attack the DNA evidence in his criminal case are somewhat difficult to ascertain as his initial motion was filed in his criminal case in St. Louis City Circuit Court, which as noted above, this Court has no access to. It appears that on or about September 20, 2001, plaintiff filed a post-conviction motion for DNA testing of all physical evidence collected in his criminal case.[4] Plaintiff's request for DNA testing was granted,[5] and testing of the items kept by

---

[4]There is a reference to this motion, filed pursuant to what was then known as Missouri Rule 29.17, but is now known as Mo.Rev.Stat. 547.035, in *Bey v. State*, 272 S.W.3d 378, 380 (Mo.Ct.App. 2008).

[5]In the order granting testing of the DNA, the Circuit Court found that there was a "reasonable probability" of exculpatory results "only if a DNA profile of more than one male c[ould] be found in the physical specimens." The Court noted that if there was DNA evidence of only one male which excluded plaintiff, this would not be exculpatory based upon the physical evidence in the panties and the vaginal smear and based upon the testimony of both experts that the small number of tailless sperm was consistent with an earlier sexual encounter. *Bey v. State*, 272 S.W.3d 378, 380 (Mo.Ct.App. 2008).

police concluded that the male DNA was *not* consistent with the DNA sample provided by plaintiff. *Bey v. State*, 272 S.W.3d 378, 381 (Mo.Ct.App. 2008).

On August 26, 2005, plaintiff moved for release from confinement, which the State of Missouri opposed, arguing that results of the DNA testing were consistent with evidence presented at trial and were not exculpatory. The court set a hearing on the motion for November 8, 2005. The hearing was continued so that a buccal swab could be obtained from the victim's boyfriend and subjected to DNA testing. However, the boyfriend's DNA did not match the DNA found on the vaginal swab. The seminal fluid stain found on the victim's panties was also tested and found to contain a mixture of at least two male lineages. The same DNA present in the vaginal swab was present in the victim's panties. The boyfriend was also excluded as the major donor of the DNA sample recovered from the victim's panties. No conclusion could be drawn as to whether the boyfriend was the minor donor to that sample. Plaintiff again moved for release on or about June 30, 2006. *Id.*

At the hearing on plaintiff's motion for release on October 30, 2006, the parties submitted a stipulation where they agreed: plaintiff was not the person whose DNA was in the vaginal swab or panties; the victim's boyfriend was likewise excluded as the person whose DNA was in the vaginal swab; the panties contained a mixture of DNA belonging to the same unidentified male whose DNA was in the vaginal swab and the victim's boyfriend's DNA; and the DNA in the vaginal swab belonged to a single, unidentified male. *Id.*

The victim testified at the hearing that she was sexually active with men other than her boyfriend during the period when the rape occurred. She identified one of those men as Fred Knox, who had been murdered since the rape. The victim testified that she had also had sex with a couple of other men whose names she could not remember. The victim stated that she probably had sex

with one of those three men the day before the rape. She recalled having sex with Knox within a week prior to the rape. The victim testified she never mentioned those men to the prosecutor during the rape case. The motion court left the evidence open for the attorneys to locate DNA evidence related to Knox. A blood sample from Knox was located and subjected to DNA testing. Knox was excluded as the source of the DNA found in the vaginal swab and the victim's panties. *Id.*

At the final hearing held on April 20, 2007, plaintiff denied he committed the rape and contended the charges were manufactured by two police officers with whom he had a prior dispute. *Id.* at 382. His counsel had also made a similar argument during his trial. The victim testified, as she did at trial, that she knew plaintiff from the neighborhood and that she recognized him as one of the three people who assaulted her and the one who sodomized and raped her. The victim said she did not initially give plaintiff's name to the police because she thought the rape was her fault for being out so late, and she just wanted it to go away. She testified she was positive at the time of the rape and at the post-conviction hearing that it was plaintiff who sodomized and raped her. *Id.*

The motion court denied plaintiff's motion for release. In its findings of fact and conclusions of law, the motion court noted its earlier statement that DNA evidence of only one male which excluded plaintiff would not be exculpatory. The Circuit Court went on to conclude:

> Now, four years later, the evidence from all the hearings and the DNA testing is that the seminal stain in the panties and on the vaginal smear is from one single unidentified male. This finding and the facts that the panties were removed by the rapist, never put back on the victim, that they were found in the alley by the police and that there were only 4–5 tailless sperm in the vaginal smear fails to demonstrate movant's innocence of the crimes for which he was convicted and sentenced.

*Id.*

The court rejected plaintiff's argument that the DNA on the panties matched that on the vaginal smear because the rapist may have wiped himself off on the panties after the rape, or

because the panties were near the rape as sheer speculation. The motion court concluded that all the evidence and the reasonable inferences from the evidence showed that the biological evidence obtained from the vaginal smear and the panties came from a prior sexual act. *Id*.

Plaintiff appealed the findings of the Circuit Court, arguing that it erred in denying his motion for release from confinement. *Bey v. State*, 272 S.W.3d 378 (Mo.Ct.App. 2008). Specifically, plaintiff asserted that the DNA on the victim's panties and vaginal swab, which did not match plaintiff, most likely belonged to the rapist, and thus, a reasonable trier of fact would not have found plaintiff guilty beyond a reasonable doubt had the DNA tests been available at trial.[6] The Missouri Court of Appeals found that the motion court's conclusion that that presence of DNA from a single unidentified male, in the context of the evidence presented at trial and during the post-conviction proceedings, did not demonstrate that plaintiff was innocent of the crimes for which he was convicted was not clearly erroneous. *Id*. at 383. The Court of Appeals also noted that §§ 547.035 and 547.037 R.S.Mo. only provide the plaintiff with an opportunity to demonstrate his innocence by DNA testing, not to attack the witness' credibility from the trial. However, the Circuit Court found that the victim's testimony regarding the reasons for the unidentified male sperm and her identification of Lowe Bey was credible. And as such, on October 28, 2008, the Missouri Court of Appeals deferred to the Circuit Court's determination. Plaintiff attempted to challenge the Missouri Court of Appeals decision, but on December 18, 2008, the Missouri Supreme Court denied transfer.

---

[6]Plaintiff's arguments were raised under Mo.Rev.Stat. § 547.037.4. The statute states that if the motion court finds the DNA testing "ordered pursuant to Section 547.035 demonstrates the movant's innocence of the crime for which he or she is in custody, the court shall order the movant's release from the sentence for the crime for which the testing occurred. Otherwise, relief shall be denied the movant." Mo. Rev. Stat. § 547.037.5.

On May 14, 2014, plaintiff filed a petition for writ of habeas corpus pursuant to Missouri Rule 91 in St. Francois County Court seeking additional DNA testing and requesting that his prior DNA testing be submitted to CODIS. In his petition he asserted a free-standing claim of actual innocence as well as a claim that he was denied exculpatory evidence, *i.e.,* that prosecutors in his criminal case engaged in a *Brady* violation when they failed to provide his defense counsel with a legible copy of the victim's medical records. *Lowe Bey v. Russell*, No. 14SF-CC00102 (24th Jud. Cir., St. Francois County Court). The Circuit Court denied the petition for writ on June 21, 2016. *Id*.

On July 9, 2020, plaintiff filed a petition for writ of habeas corpus pursuant to Missouri Rule 91 in the Missouri Court of Appeals arguing the same two issues as those he asserted in his habeas petition in St. Francois County Court. *Lowe Bey v. State*, No. ED109028 (Mo.Ct.App. 2020). The Court summarily denied plaintiff's petition for writ on July 15, 2020.

On September 16, 2022, plaintiff filed a petition for writ in St. Francois County Circuit Court titled, "Ex Parte Petition for Writ of Habeas Corpus ad Testificandum, Granting Fredrico Lowe Bey to Appear via Video Conference to Hear Reasons for Support for Relief" and an "Ex Parte Motion for Court Order, to Have DNA Test Results Submitted to CODIS for a Manual Keyboard Search and Comparison by the Missouri Highway Patrol or the FBI Under 42 U.S.C. § 14132 *et seq* and 42 U.S.C. §14132(b)(3)(C) DNA Identification Act." On that same date the Court entered an order finding that because it appeared that petitioner was seeking further DNA testing, or further refinement of earlier DNA testing, to exonerate him from a criminal conviction, and Mo.Rev.Stat. § 547.035 stated that such motions must be filed with "the clerk of the sentencing court," his motion must be dismissed. *In re: Fredrico Lowe Bey*, No. 22SF-CC00155 (24th Jud. Cir., St. Francois County Court).

8

On February 26, 2025, plaintiff filed a "motion for remand" in *Bey v. State*, 272 S.W.3d 378 (Mo.Ct.App. 2008), in which he sought to have the Missouri Court of Appeals "remand" his case to the Circuit Court to "have DNA test results submitted to CODIS for a manual keyboard search and comparison." On March 6, 2025, the Court of Appeals denied plaintiff's motion stating that it had no authority to remand the case to the Circuit Court sixteen (16) years after the appeal was mandated. Additionally, in the opinion affirming judgment, the Court of Appeals concluded that the presence of DNA from another male, "in the context of the evidence presented at trial and during the post-conviction proceedings, did not demonstrate that [plaintiff] was innocent of the crimes for which he was convicted." *Id*. at 383.

As this Court is unable to access plaintiff's criminal docket on Missouri Case.Net, the Court cannot ascertain if plaintiff has filed any additional motions within the last five (5) years with the St. Louis Circuit Court seeking additional DNA testing pursuant to Mo.Rev.Stat. § 547.035.

**Discussion**

As noted above, plaintiff filed a complaint in this Court, as well as a motion for "manual keyboard search" in which he seeks mandatory injunctive relief from the State of Missouri requesting that his prior DNA testing, which was done in the St. Louis City Circuit Court between 2001 and 2007, be submitted to CODIS. Plaintiff appears to believe that if the victim's DNA evidence is submitted to CODIS for comparison testing, the "actual rapist" will be revealed.

In his motion for injunctive relief, plaintiff appears to assert that his procedural due process and equal protection rights have been violated by the State of Missouri's failure to submit the DNA evidence to CODIS for a "manual keyboard search." These allegations are best brought pursuant

to 42 U.S.C. § 1983.[7] However, in his complaint, plaintiff appears to allege that he is actually innocent[8] of the crimes for which he was convicted and that the State of Missouri withheld exculpatory evidence at trial, namely medical records of the victim, which could have allowed his lawyer to impeach her testimony at trial. These allegations are best brought pursuant to 28 U.S.C. § 2254.

Based on the allegations, this appears to be a "hybrid" action, where plaintiff is seeking both relief under 42 U.S.C. § 1983, as well as under 28 U.S.C. § 2254. The Court will not allow plaintiff to proceed under both statutes simultaneously in one action. If plaintiff wishes to bring both actions in this Court, he must file two separate actions, seeking separate relief under the two different statutes.

Plaintiff will be required to submit an amended complaint on a court-provided form clarifying his claims. Because it is unclear whether plaintiff seeks relief under 42 U.S.C. § 1983 or 28 U.S.C. § 2254, the Court will direct the Clerk of Court to send plaintiff forms for both types of cases. Plaintiff should inform the Court whether he intends for this action to be brought under

---

[7]When a prisoner pursues state post-conviction DNA testing through the state-provided litigation process, the statute of limitations for a § 1983 procedural due process claim begins to run when the state litigation ends. *Reed v. Goertz*, 598 U.S. 230 (2023). The Missouri Court of Appeals affirmed the denial of plaintiff release on October 28, 2008.

[8]The doctrine of "actual innocence" or "miscarriage of justice" is applied by courts as an "exception to overcome various procedural defaults" that stand in the way of habeas petitioners – for example, successive petitions, abusive petitions, failure to develop facts in state court, and failure to abide by state procedural rules. *McQuiggin v. Perkins*, 569 U.S. 383, 392-93 (2013). The Supreme Court determined that the "body of our habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993) (assuming, without deciding, that a cognizable actual innocence claim existed to examine an asserted Eighth Amendment substantive right by a habeas petitioner); *see also Schlup v. Delo*, 513 U.S. 298, 314-15 (1995) (quoting *Herrera* and assuming arguendo an actual innocence claim to examine a procedural right asserted by a habeas petitioner). In *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52, 72 (2009), the Supreme Court noted that Osborne would have to litigate an actual innocence claim, as opposed to his DNA access claim, in habeas corpus.

42 U.S.C. § 1983 or 28 U.S.C. § 2254 by filing the appropriate forms in this case.[9] If plaintiff wishes to pursue claims under both statutes, he will need to file a second, separate action in this Court.

Plaintiff has **thirty (30) days** from the date of this Order to file an amended complaint on the Court's form in accordance with the specific instructions set forth here. All claims in the action must be included in one, centralized complaint form. *See* Fed. R. Civ. P. 8(a). Plaintiff's amended complaint should be clear on how the claims raised in this matter differ from those filed in other pending matters.

Additionally, plaintiff is warned that the filing of an amended complaint replaces the original complaint, so plaintiff must include each and every one of the claims he wishes to pursue in the amended complaint. *See, e.g., In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928 (8th Cir. 2005). Any claims from the original complaint that are not included in the amended complaint will be deemed abandoned and will not be considered. *Id.* The allegations in the complaint must show how each and every defendant is directly responsible for the alleged harms. If plaintiff wishes to sue defendants in their individual capacities, plaintiff must specifically say so in the amended complaint. If plaintiff fails to sue defendants in their individual capacities, this action may be subject to dismissal.

All of plaintiff's claims should be clearly set forth in the "Statement of Claim." If plaintiff fails to file an amended complaint on the Court's form within thirty (30) days and in compliance

---

[9]For example, if plaintiff wishes to pursue his procedural due process and equal protection claims in this case, he should file an amended complaint on a Court-provided Prisoner Civil Rights Complaint Form. He will also need to submit a form Motion to Proceed in Forma Pauperis, as well as a certified inmate account statement from ERDCC. Alternatively, if plaintiff wishes to pursue his actual innocence claims and *Brady* violation claims in this action, he should instead submit his claims on a 2254 Habeas Corpus Petition and also submit a Motion to Proceed in Forma Pauperis and Affidavit-Habeas.

with the Court's instructions, the Court will dismiss this action without prejudice and without further notice.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk is directed to mail to plaintiff a copy of the Court's Prisoner Civil Rights Complaint form and Application to Proceed in District Court without Prepaying Fees and Costs

**IT IS FURTHER ORDERED** that the Clerk is directed to mail to plaintiff a copy of the Court's 2254 Habeas Corpus Petition and Motion to Proceed in Forma Pauperis and Affidavit-Habeas.

**IT IS FURTHER ORDERED** that plaintiff must file an amended complaint, in accordance with the instructions set forth above, on the Court's form within **thirty (30) days** of the date of this Order.

**IT IS FURTHER ORDERED** that plaintiff must either pay the full filing fee of $405 **or** submit an application to proceed in forma pauperis within **thirty (30) days** of the date of this Order.

**IT IS FURTHER ORDERED** that, if plaintiff chooses to submit an application to proceed without prepaying fees or costs and plaintiff maintains a prison account at ERDCC, he shall file a certified copy of his prison account statement for the six-month period immediately preceding the filing of the complaint, within **thirty (30) days** of the date of this Order.

**IT IS FINALLY ORDERED** that if plaintiff fails to comply with this Order, the Court will dismiss this action without prejudice and without further notice.

Dated this 29th day of April, 2025.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE